1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9         **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   CHI PHAM and FRANK NGUYEN, on                CASE NO. 10cv0971-LAB (AJB)
     Behalf of Themselves and Others
12   Similarly Situated,                          **ORDER DENYING MOTION TO**
                                                  **DISMISS AND MOTION TO**
13                              Plaintiffs,       **TRANSFER**

                vs.
14

15   CAPITAL HOLDINGS, INC., a California
     Corporation; et al.,
16
                                Defendants.
17

18   **I.      Background**

19          Pending before the Court is defendants' motion to dismiss on the ground venue is

20   improper, or in the alternative to transfer this case to the Central District of California.  There

21   are five individual defendants — Cornelio Sison, Jet Sison, Jo Cui, Ken Cunningham, and

22   Nilda Paligar — and two corporate defendants — Capital Holdings, Inc. and Season's Land

23   Corp.

24          According to the complaint, Capital Holdings, a real estate company, solicited the

25   plaintiffs by telephone in May or June 2005, as part of a marketing plan aimed at Asian

26   immigrants.  (Compl. ¶¶ 3 & 47, Doc. No. 6-2, *Pham Declaration*, ¶¶ 2-3.)  Based on these

27   solicitations, the plaintiffs met with defendants in San Bernardino, CA and purchased

28   property there for $55,000.  (Doc. No. 6-2, ¶ 3.)  From August 2005 until February 2009,

1   plaintiffs paid $502.06 every month to the defendants, resulting in $27,111.24 in payments.[1]

2   (*Id*. at ¶ 7.)   On September 4, 2009, defendants mailed a "Release and Cancellation

3   Agreement" to the plaintiffs which absolved them of any further obligation to pay, and

4   required them to acknowledge that all monies paid to Capital Holdings were to be retained

5   by the company.   (Doc. No. 6-1, Ex. 4, p. 2.)   The plaintiffs believe the Release and

6   Cancellation Agreement was fraudulent because it falsely claimed that the Plaintiffs had

7   requested the document and because it impliedly threatened their credit rating if they refused

8   to sign it.   (Compl. ¶ 7.)   In the end, the plaintiffs lost all money they invested in the property

9   and have no claim to the property itself.

10   **II.     Legal Standard**

11          Venue is governed 28 U.S.C. § 1391.   When subject matter jurisdiction is based on

12   a federal question, as it is in this case, venue is appropriate in: "(1) a judicial district where

13   any defendant resides, if all defendants reside in the same State; (2) a judicial district in

14   which a substantial part of the events or omissions giving rise to the claim occurred, or a

15   substantial part of property that is the subject of the action is situated; or (3) a judicial district

16   in which any defendant may be found, if there is no district in which the action may otherwise

17   be brought."   28 U.S.C. § 1391(b)(1)-(3).

18          The burden is on the plaintiffs to show that venue is proper.   *Piedmont Label Co. v.*

19   *Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).   The Court need not accept the

20   pleadings as true and may rely on extrinsic evidence, *Argueta v. Banco Mexicano, S.A.*, 87

21   F.3d 320, 324 (9th Cir. 1996), but must "draw all reasonable inferences in favor of the non-

22   moving party."   *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

23   **III.     Discussion**

24          Plaintiffs allege that venue is proper in the Southern District of California because a

25   substantial portion of the events giving rise to the lawsuit took place here.   (Compl. ¶ 15.)

26   In addition, they argue venue is proper because two of the individual defendants - Mr.

27   ─────────────

28          [1] The plaintiffs' arithmetic is puzzling.  There are 43 months from August 2005 through
     February 2009, inclusive.  Forty-three months at $502.06 a month equals $21,588.58, not
     $27,111.24.

1   Cornelio Sison and Ms. Jet Sison - live in Oceanside, CA, in the Southern District.  (*Id.*)  In

2   their motion, the defendants point out that the Sisons live in San Bernardino County, in the

3   Central District.  (Doc. No. 3-1, p. 1.)  They also argue that only a small portion of the events

4   giving rise to the lawsuit took place in the Southern District.  (*Id*. at 3-5.)

5      Although the briefs focus on the propriety of venue under 28 U.S.C. § 1391(b)(2), the

6   Court believes it is wiser to focus on § 1391(b)(1).  Plaintiffs allege that all defendants reside

7   in California (Compl. ¶¶ 15, 18-19, 21), and the defendants do not dispute this fact (Doc. No.

8   3-1, p. 3).  Venue is therefore proper in this District if any one defendant resides here.

9      All of the individual defendants reside outside the Southern District; this isn't in

10   dispute.  But there are also two corporate defendants in this case - Capital Holdings, Inc. and

11   Season's Land Corp.  For venue purposes, a corporation is deemed to reside in any District

12   in which it is subject to personal jurisdiction.  28 U.S.C. § 1391(c). Therefore, if the Southern

13   District Court has personal jurisdiction over either of the corporate defendants, then it is a

14   proper venue for this case.

15      Because there is no federal statute governing personal jurisdiction, the Court applies

16   California's long-arm statute.  *Core-Vent Corp. v. Nobel Industries AB* , 11 F.3d 1482, 1484

17   (9th Cir. 1993).  California's long-arm statute permits jurisdiction to the extent permitted by

18   principles of due process.  Cal. Code Civ. Pro. § 410.10 ("A court in this state may exercise

19   jurisdiction on any basis not inconsistent with the Constitution of this state or of the United

20   States.")

21      Personal jurisdiction may be either "general" or "specific."  A forum has general

22   personal jurisdiction over a defendant when that defendant has "substantial" or "continuous

23   and systematic contact" with the forum, "even if the cause of action is unrelated to the

24   defendant's forum activities."  *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir. 1984).

25   Specific personal jurisdiction obtains, on the other hand, when a defendant has "certain

26   minimum contacts with [the forum] such that the maintenance of the suit does not offend

27   traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S.

28   31, 316 (1945) (internal quotes omitted).  The Ninth Circuit applies a three prong test to

determine if specific personal jurisdiction exists.  First, "the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of the its law."  *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).  Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities."  *Id.*  Third, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."  *Id.*

It is clear that Capital Holdings, Inc. has had sufficient contacts with the Southern District of California to be subject to specific personal jurisdiction in this District.  As to the first prong of the analysis prescribed by *Harris Rutsky*, Capital Holdings directed its activities toward the forum by telephonically soliciting plaintiffs who reside in the Southern District.  (Doc. No. 6, p. 4)  This constitutes purposeful availment.  *See L.D. Reeder Contractors of Ariz. v. Higgins Indus. Inc.*, 265 F.2d 768, 773 (9th Cir. 1959) (holding that "a single act or transaction may be the basis for jurisdiction over a nonresident defendant" if the act has a substantial and direct connection with the cause of action); *see also SSM Industries v. Fairchild Apparel Group, Inc.*, 2004 WL 1109547, *6 (E.D. Tenn. Jan. 16, 2004) ("Even a single act by a defendant deliberately directed toward a Tennessee resident that gives rise to cause of action can support a finding of purposeful availment and meet the due process requirement of minimum contacts.") As to the second prong, these phone calls prompted plaintiffs to meet with the individual defendants, and eventually purchase property from them which gave rise to the claims at hand.  Finally, the defendants cannot claim it would be unreasonable to be sued in the Southern District of California.  They marketed their services toward San Diego residents and could "reasonably anticipate being haled" into the Southern District based on those marketing efforts.  *See World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Further, the distance between the Southern and Central Districts is not so great as to create an undue burden on the defendants, bolstering the conclusion that the Southern District's claim of personal jurisdiction over Capital Holdings is reasonable.

1    The Court finds that venue is proper under 28 U.S.C. § 1391(b)(1).  All defendants

2  are residents of California, and Capital Holdings, Inc. is deemed a resident of the Southern

3  District of California by virtue of the fact that the Southern District has specific personal

4  jurisdiction over it.  The defendants' motion to dismiss, or in the alternative to transfer venue,

5  is therefore **DENIED**.

6         **IT IS SO ORDERED**.

7

8  DATED:  October 20, 2010

9

10  **HONORABLE LARRY ALAN BURNS**
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28