# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHI PHAM and FRANK NGUYEN, on Behalf of Themselves and Others Similarly Situated,<br><br>Plaintiffs,<br>vs.<br><br>CAPITAL HOLDINGS, INC., a California Corporation; et al.,<br><br>Defendants. | CASE NO. 10cv0971-LAB (AJB)<br><br>**ORDER ON MOTION TO DISMISS** |

   This case arises out of a land investment scam allegedly perpetrated by Capital Holdings, Inc. against Plaintiffs and other Asian immigrants. Plaintiffs' complaint, at 60 pages and 190 paragraphs in length, does not allow for a simple summary, although this is due in part to their attempt to allege not only basic fraud but also violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968. Now before the Court is Capital Holdings' motion to dismiss. Capital Holdings argues that Plaintiffs fail to state a claim under RICO *and* fail to allege fraud with adequate specificity. In the alternative, Capital Holdings asks the Court to stay this action under the *Colorado River* doctrine. The Court's analysis starts and ends with the RICO claims, which it finds are unsupported by Plaintiffs' factual allegations — and without which the Court lacks jurisdiction over this case.

//


## I. Factual Background

Capital Holdings is a real estate company, and, according to Plaintiffs, a villainous one that sold raw land it did not own, collected interest on loans it did not make, and charged buyers property taxes above those that were actually due. (Compl. ¶¶ 3, 50–60.)

First, the land sales. Capital Holdings sold land in San Bernardino county to Plaintiffs pursuant to a contract titled "Agreement for Sale and Purchase of Real Estate." (Compl. ¶¶ 53, 91.) That contract represented that Capital Holdings was the seller of the land, which, Plaintiffs argue, implied Capital Holdings owned the land and would transfer ownership to Plaintiffs. Not so. The land was actually owned by Defendant Season's Land, a related corporation, the contract was never recorded as a land sale, and Plaintiffs received no deed or other paperwork establishing their interest in the property.[1] (Compl. ¶¶ 53, 96.)

Second, the loans. To accomplish the land sales, Capital Holdings purported to loan Plaintiffs the difference between the down payment and the purchase price, collecting interest, of course, on the unpaid balance. (Compl. ¶ 56.) For example, Plaintiffs put down $5,500.00 for a $55,000 piece of property, financing $49,500 and incurring expected financing charges of $40,871.15. (Compl. ¶ 91.) But according to Plaintiffs, there was no loan. (Compl. ¶ 56.) "The purported borrowers never signed nor were they provided any loan, mortgage, deed of trust or other similar documents."[2] (Compl. ¶ 57.)

---

[1] There is a discrepancy in the Plaintiffs' complaint as to Season's Land's ownership of the property. Initially (¶ 53), Plaintiffs suggest that Season's Land, not Capital Holdings, was the actual owner of the property at the time of sale. Later (¶ 92), Plaintiffs suggest that Season's Land acquired the land *after* the Plaintiffs ostensibly bought it.
The Court is also confused by Plaintiffs' accusation that there was something nefarious about not recording the sale or not formalizing Plaintiffs' interest in the property. (Compl. ¶ 54.) According to promotional information on the website of Capital Holdings, this was a feature of the transaction: "When do I get the grant deed? If you only put 10 or 20% down, the grant deed stays in Capital Holdings' name. You can get the grant deed to the property if you put 30% down, pay for the property in full, or wait until you get 30% equity. Once your time comes for getting the grant deed, Capital Holdings will send you the appropriate paperwork to file with the County." (Compl. ¶ 79.)

[2] Here, again, the Plaintiffs' complaint leaves the Court with questions. In promotional materials distributed through the United States mail, Capital Holdings indicated, "When you purchase land from Capital Holdings, Inc., you do so by executing a land contract (sometimes called a contract for deed). You have not executed a loan or mortgage." (Compl. ¶ 86.) It seems odd, then, that Plaintiffs are attacking Capital Holdings for not actually loaning Plaintiffs any money. In all fairness, though, elsewhere Capital Holdings did

Third, the property taxes. Plaintiffs allege they paid property taxes to Capital Holdings on the land they purchased that were in excess of the actual property taxes. (Compl. ¶ 58.) Capital Holding charged Plaintiffs $687.50 in property taxes for each of the years 2007, 2008, and 2009 when in fact the taxes due in those years were $180.92, $184.49, and $67.59, respectively. (Compl. ¶¶ 93–94.)[3] Not only that, Capital Holdings represented that any tax amount paid in excess of the actual county taxes would be applied to reduce Plaintiffs' loan amount (Compl. ¶ 86), and this did not happen. (Compl. ¶ 97.)

The core of Plaintiffs' complaint is that all of the above amounts to a kind of fraud comprised of false statements and the omission of material facts, and that to the extent Capital Holdings advertised its investment scam over the internet and communicated with buyers like Plaintiffs through the United States mail, it committed extensive and repeated wire and mail fraud that exposes it to liability under RICO. (*See* Compl. ¶¶ 65, 73, 81–82.) Plaintiffs also allege that Capital Holdings laundered money, engaged in monetary transactions in property derived from unlawful activity, and transferred money taken by fraud, all of which also expose it to RICO liability. *See* 18 U.S.C. § 1961 (listing predicate racketeering acts).

The actual *resulting damage* Plaintiffs allege appears to be minimal. There is no accusation, for example, that Plaintiffs were prevented from occupying the property they purchased, or that they were wrongfully deprived of their equity in it. There is a suggestion that Capital Holdings sold property for far more than it was really worth (Compl. ¶ 4), but there is no accusation that Capital Holdings made material misrepresentations about any

---

indicate that the land purchases would be effectuated by a loan from Capital Holdings to buyers. (Compl. ¶ 79 ("You don't need money to acquire land. Because of the value inherent in the land itself, CAPITAL HOLDINGS, INC. will lend up to 90% of the sales price of the property. With as little as $1,000, you can control up to 10,000 in land."); Compl. ¶ 79 ("What is my monthly payment? Your monthly payment depends on the loan amount you take out. Use our calculator to find out what the payment will be."); Compl. ¶ 87 ("Any amounts you may pay over the actual county tax are applied to reduce your loan.").)

[3] In Capital Holdings' promotional materials, it represented that property taxes, under Proposition 13, are 1.25 percent of the purchase price. (Compl. ¶ 79.) That explains the taxes Plaintiffs were charged; $687.50 is 1.25 percent of $55,000.

property in order to receive the purchase price it did.[4]  But Capital Holdings does not contest Plaintiffs' allegations of mail and wire fraud at this time; instead, it simply argues that Plaintiffs have failed to plead the elements of a cause of action under RICO.

## II.  Legal Standard

A rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In considering such a motion, the Court accepts all allegations of material fact as true and construes them in the light most favorable to Plaintiffs.  *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).  To defeat a 12(b)(6) motion, a complaint's factual allegations needn't be detailed, but they must simply be sufficient to "raise a right to relief above the speculative level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, "some threshold of plausibility must be crossed at the outset" before a case can go forward.  *Id.* at 558 (internal quotations omitted).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. —, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

While the Court must draw all reasonable inferences in Plaintiffs' favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted).  In fact, the Court does not need to accept any legal conclusions as true.  *Iqbal*, 129 S.Ct. at 1949.  A complaint does not suffice "if it tenders

---

[4] In September 2009, Plaintiffs received a "Release and Cancellation Agreement" that they maintain they did not request and did not execute. (Compl. ¶ 105–108.)  This agreement would have left Capital Holdings with all money paid by the Plaintiffs, and it would have released Plaintiffs from its obligations under the purchase agreement. Plaintiffs allege that "[t]he release document was another facet of the fraud scheme executed by the defendants." (Compl. ¶ 108.)  Perhaps the implication here is that Capital Holdings was inviting (or even tricking) buyers to cancel their purchase agreements so that it could keep their money and regain full equity in their properties, but Plaintiffs do not allege that this actually happened.

naked assertions devoid of further factual enhancement" (*id.* (internal quotations omitted)), nor if it contains a merely formulaic recitation of the elements of a cause of action. *Bell Atl. Corp.*, 550 U.S. at 555.

### III.    RICO Claims

There are four prohibited activities under RICO, *see* 18 U.S.C. §§ 1962(a)-(d), and Plaintiffs accuse Defendants of engaging in each of them. (Compl. ¶ 73.) Capital Holdings argues that Plaintiffs fail to plead adequate facts to carry their accusations past a motion to dismiss. The Court agrees.

#### A.    18 U.S.C. § 1962(a)

A violation of § 1962(a) requires proof of three elements. First, a person must derive income from a pattern of racketeering activity. Second, that income must be invested in an enterprise. And third, the enterprise must be engaged in interstate commerce. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1147 (9th Cir. 2008). RICO is a criminal statute, however, and plaintiffs who seek *civil* damages "must allege facts tending to show that [they] were] injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pac. Gas and Electric Co.*, 981 F.2d 429, 437 (9th Cir. 1992). This "proximate causation" requirement is not met simply because "proceeds from alleged racketeering activity" are reinvested "back into the enterprise to continue its racketeering activity." *Sybersound*, 517 F.3d at 1149.[5] Rather, the use or investment of racketeering income must give rise to an injury that is "separate and distinct from the injuries incurred from the predicate act itself." *Id.*; *see also Westways World Travel v. AMR Corp.*, 182 F.Supp.2d 952, 960 (C.D. Cal. 2001) ("To state facts alleging a claim under Section 1962(a), a plaintiff must allege he or she suffered injury arising from the defendant's use or investment of racketeering income, as opposed to injury from the predicate racketeering acts themselves.").

Capital Holdings argues that Plaintiffs allege no facts to show their injuries were caused by the "use or investment of racketeering income." To the contrary, it appears from

---

[5] The "proximate causation" requirement is implied not by § 1962(a), but by 18 U.S.C. § 1964(c), which provides a private right of action for a RICO violation. *Sybersound*, 517 F.3d at 1147.

Plaintiffs' complaint that their alleged injuries were caused by the predicate acts of the alleged racketeering activity, particularly wire and mail fraud, rather than the use or investment of income gained through those acts. (Compl. ¶¶ 3, 50–60.) If that's true, then this is a straightforward fraud case and the RICO allegations have no traction whatsoever.

Plaintiffs' response to this is that they have been injured "by defendants' laundering the proceeds of the mail and wire fraud activity by investing proceeds in property held by nominees and alter egos, i.e., Plaintiffs are injured by the establishment and operation of the money laundering facet of the enterprise." (Opp'n Br. at 10.) This response betrays a misunderstanding of the causation requirement of a civil RICO claim. In Plaintiffs' complaint, money laundering is identified as a predicate act of racketeering activity.[6] Any injury suffered by Plaintiffs on account of the alleged money laundering is not, therefore, an injury "by the use or investment of racketeering income." *Nugget*, 981 F.2d at 437. It is an injury suffered "from the predicate act itself." *Sybersound*, 517 F.3d at 1149.

This deficiency is not merely a matter of misplaced headings in Plaintiffs' complaint, either. What they are essentially trying to do is bifurcate Capital Holdings' activities into one chapter of wire and mail fraud that led to its ill-gotten gains, and then a subsequent chapter of money-laundering in which those gains — the racketeering income — were used to inflict an injury on them. The problem with that argument is that the injuries Plaintiffs attempt to attribute to money laundering are in fact inseparable from the injuries caused by the predicate acts of fraud. In fact, those injuries — Capital Holdings insulated itself from judgment *and* bought more land to kept its alleged scam going — either exacerbated the injuries attributable to fraud or facilitated them in the first place. They simply cannot be said to be separate and distinct from the underlying fraud alleged.

//

---

[6] Page 18 contains the major heading "B. PREDICATE ACTS" and the subheading "1. OMISSIONS OF MATERIAL FACTS AND FALSE AND MISLEADING STATEMENTS . . . (18 U.S.C. § 1341 AND 1343)." This subsection contains the allegations of wire and mail fraud. Page 38 contains the subsequent subheading "2. ENGAGING IN: (1) LAUNDERING AND DISTRIBUTING SALES PROCEEDS . . . (18 U.S.C. §§ 1956, 1957 & 2314)." This subsection contains the allegations of money laundering.

The emphasis Plaintiffs place in their complaint on the wire and mail fraud further confirm for the Court that it is *those acts* that give rise to fundamental injury in this case, and Plaintiffs cannot allege a truly separate injury merely because Capital Holdings was able to benefit from its alleged fraud (by laundering money) to their even greater detriment. Plaintiffs' civil RICO claim under § 1962(a) is therefore **DISMISSED**.

### B.     18 U.S.C. § 1962(b)

Section 1962(b) of RICO makes it unlawful "for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise." To state a claim under the provision, a plaintiff must show "1) the defendant's activity led to its control or acquisition over a RICO enterprise, and 2) an injury to plaintiff resulting from defendant's control or acquisition of a RICO enterprise." *Sebastian Int'l, Inc. v. Russolillo*, 186 F.Supp.2d 1055, 1068 (C.D. Cal. 2000).

Capital Holdings argues that Plaintiffs' § 1962(b) claim fails for the same reason as its § 1962(a) claim, namely, that Plaintiffs were allegedly injured by the predicate racketeering acts, not by the control or acquisition of an enterprise to which those acts gave rise. The Court agrees. In Plaintiffs' complaint, they refer to Capital Holdings' alleged fraud scheme as the "phantom land sales, loans, property taxes and money laundering enterprise." (Compl. ¶ 64.) But the complaint makes it abundantly clear that *that enterprise* is nothing other than *predicate acts* that constitute it, and that it is *those predicate acts* that are responsible for the Plaintiffs' injuries. As Capital Holdings argues, there are no allegations in Plaintiffs' complaint to the effect that the Plaintiffs were injured by its *control or acquisition* of a distinct enterprise.

Plaintiffs' response, again, is to attempt to skim off the top of Capital Holdings' illicit acts an "enterprise" that is segregable from those acts, and then hold it up as inflicting a separate and distinct injury on them. They argue that "[t]he facts show that Plaintiffs were injured by the defendants' manufacturing a market for raw land that was both fraudulent and illusory." (Opp'n Br. at 11.) In other words, Plaintiffs committed wire and mail fraud, that

fraud allowed it to maintain or gain control of a fraudulent real estate investment enterprise, and the control or acquisition of that enterprise was independently injurious. This story just doesn't pan out when Plaintiffs' factual allegations are taken at face value. The wire and mail fraud didn't *lead to* the control or acquisition of an enterprise; they *were* that enterprise, or at least a major constituent part. And the Plaintiffs weren't injured by an inflated market for raw land that succeeded or was the byproduct of Capital Holdings' alleged wire and mail fraud. Rather, that market was an integral part of the underlying predicate racketeering acts, and indeed, was the essence of Capital Holdings' alleged fraud.

The only fair reading of Plaintiffs' complaint is that Capital Holdings committed a series of bad acts that, in and of themselves, perpetrated a fraud on Plaintiffs. Plaintiffs' attempt to plead a RICO claim under § 1962(b) has them assembling those facts in a most disingenuous way. The § 1962(b) claim is therefore **DISMISSED**.

### C.     18 U.S.C. § 1962(c)

Plaintiffs' bring their third RICO claim under section 1962(c), which makes it unlawful "for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." The parties both begin their arguments with respect to the 1962(c) claim by noting that Plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. (Br. at 5; Opp'n Br. at 13.) True, *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007), but little turns here on that standard.

Instead, the merits of Plaintiffs' 1962(c) claim turns on whether the "person" allegedly engaged in racketeering activity is different from the RICO enterprise engaged in interstate commerce. If there is no difference between the two, the claim fails. *See Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984) ("If [the defendant] is the enterprise, it cannot also be the RICO defendant."); *Wilcox v. First Interstate Bank of Oregon*, 815 F.2d 522, 529 (9th Cir. 1987) (same); *Myers v. Lee*, Case No. 10-CV-131, 2010 WL 3745632 at *3 (E.D. Va.
//

Sept. 21, 2010) ("Courts are in agreement that for the purposes of liability under Section 1962(c), a RICO person must be distinct from the RICO enterprise.").

*Myers* is a helpful case. The plaintiff claimed he was "systematically indoctrinated and defrauded over the course of a year . . . by the defendants acting through a network of affiliated entities formed and controlled by [another] defendant." *Id.* at *1. The court recognized that "liability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs," *id.* at *3 (internal quotations omitted), and then found, "The Amended Complaint fails to allege a RICO enterprise that operates or functions in a way distinct from the defendants themselves. There is a complete overlap between the defendants, their alleged agents, and the enterprise." *Id.* at *4.

The principles articulated in *Myers* are directly applicable here. Plaintiffs here allege an *enterprise* of "phantom land sales, loans, property taxes and money laundering." (FAC ¶ 64.) That enterprise, they further allege, was conducted by a pattern of racketeering activity, namely wire and mail fraud. (FAC ¶ 65.) The Court has already rejected the idea that the enterprise and the predicate racketeering activity are severable, and in the context of Plaintiffs' 1962(c) claim, it rejects the idea that the alleged enterprise is severable from the individual defendants and their respective behaviors. In other words, Plaintiffs have alleged "only an enterprise that is the defendants by a different name." *Myers* at *5. Neither the alleged RICO enterprise nor the defendants "has a purpose distinct from the goals and objectives of the other." *Id.* Yet again, Plaintiffs are attempting, unsuccessfully, to plead a RICO claim that is simply unwarranted by even their own factual allegations. "For the purposes of section 1962(c), RICO plaintiffs must allege a defendant–the 'person' or 'persons'—who is distinct from the 'enterprise' whose business the defendant is conducting." *Sever v. Alaska Pulp. Corp.*, 978 F.2d 1529, 1533 (9th Cir. 1992). Plaintiffs here have not made that allegation. Neither the corporate nor individual defendants have engaged in racketeering activity that is any way distinct from the alleged RICO enterprise. The "complete identity" between the defendants here and the alleged RICO enterprise is fatal to

Plaintiffs' § 1962(c) claim, which is therefore **DISMISSED**.[7] *Myers* at *5; *see also Chang v. Chen*, 80 F.3d 1293, 1298 (9th Cir. 1996) (adopting interpretation of enterprise element of § 1962(c) claim that requires the RICO organization to be separate and distinct from the racketeering activity in which it engages).

### D. 18 U.S.C. § 1962(d)

Plaintiffs' final RICO claim alleges a RICO conspiracy. The failure of their substantive claims under §§ 1962(a)–(c), however, forecloses this claim. *See Odom*, 486 F.3d at 547 (suggesting that § 1962(d) conspiracy claim requires the survival of other substantive RICO claim); *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n. 2 (4th Cir. 2001).

### IV. Plaintiffs' State Law Claims

Without a surviving RICO claim, Plaintiffs are left only with state law claims for fraud, unfair and deceptive business practices, unjust enrichment, and negligent misrepresentation. There is no basis for diversity jurisdiction in this case, and the Court is well within its discretion to dismiss a case for lack of jurisdiction when all federal claims have been dismissed and only state law claims over which it has supplemental jurisdiction remain. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Noyes v. Kelly Svcs.*, 488 F.3d 1163, 1173 (9th Cir. 2007); *Acri v. Varian*, 114 F.3d 999, 1000 (9th Cir. 1997); 28 U.S.C. § 1367(c).

Plaintiffs argue that the Court has jurisdiction over this case, nonetheless, under the Class Action Fairness Act of 2005 ("CAFA"). CAFA requires a plaintiff class of 100 or more persons, an amount in controversy greater than $5 million, and minimal diversity. *Serrano*

---

[7] Capital Holdings makes two arguments with respect to Plaintiffs' § 1962(c) claim. The first is the argument the Court has seized on: "Plaintiffs fail to allege the existence of a distinct RICO enterprise." (Br. at 6.) The second, which the Court needn't and doesn't reach, is that Plaintiffs' complaint "is devoid of allegations showing how any of the individual defendants had some or any part in directing the affairs of the purported enterprise." (Br. at 7.) Curiously, Plaintiffs completely miss the first argument in their opposition brief and focus exclusively on the second. (Opp'n Br. at 13–14.) Plaintiffs' failure to respond in any way to the principle articulated in *Rae, Wilcox*, and *Myers* that a RICO person must be distinct from a RICO enterprise suggests to the Court that it has no response, and that its § 1962(c) claim cannot survive.

*v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007). It is not apparent on the face of Plaintiffs' complaint that these elements are satisfied. Plaintiffs shall therefore have 14 days from the date this Order is entered to show cause why the Court has jurisdiction over this case under CAFA. If they fail to do so, the Court will dismiss this case for lack of jurisdiction.

## V. Conclusion

This simply is not a RICO case. Plaintiffs may well allege fraud, but they fail, in the Court's judgment, to allege adequate facts to invoke RICO and bring this case in federal court. Plaintiffs have 14 days to show jurisdiction under CAFA, and if they fail to do so the Court will dismiss this case for lack of jurisdiction.

**IT IS SO ORDERED**.

DATED: August 9, 2011

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge